## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC MOORE,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER MONAGHAN *and*** | : | |
| **OFFICR HALL,** | : | **No. 19-4400** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                JANUARY _____ , 2021

Eric Moore claims to be the victim of an illegal search, arrest, and imprisonment. Mr. Moore alleges that two Philadelphia police officers conducted an unlawful traffic stop, used excessive force to remove him from his car—injuring him in the process—then searched him and the car. After recovering bulk marijuana from the trunk of the car, the officers arrested Mr. Moore. He was subsequently charged with possession of a controlled substance with intent to distribute, although these counts were dropped following a suppression hearing. The officers have moved for partial summary judgment.

For the reasons that follow, the Court grants the motion in part. The motion for summary judgment on Mr. Moore's § 1983 claim for unlawful search and seizure is denied without prejudice with respect to the officers' assertion of qualified immunity.

### BACKGROUND AND PROCEDURAL HISTORY

Eric Moore asserts a battery of claims against two Philadelphia police officers arising out of a car stop. Officers Monaghan and Hall pulled Mr. Moore over shortly before midnight in September 2017. There was no one in the immediate area other than the officers and Mr. Moore. Mr. Moore was the sole occupant of his vehicle.

1

The parties dispute why Mr. Moore was pulled over and what happened next. For purposes of summary judgment, the facts are taken in the light most favorable to Mr. Moore.

According to Mr. Moore, he was lawfully operating his car at the time he was stopped. He denied violating any traffic laws. Doc. No. 36-5 (Moore Depo. Tr.) at 35:2-17. And he denied the smell of an odor of marijuana coming from his car. The officers, however, testified that they observed a speeding car cut off cars and cross over the double solid yellow lines. They stopped the car because of its erratic movements. Doc. No. 36-4 (Arrest Memo). As they approached the car, the officers detected a strong smell of unburnt marijuana emanating from it. Doc. No. 36-2 (Monaghan Depo Tr. at 41:19-23).

Officer Monaghan approached the driver's side of the car and asked for the driver's license, registration, and insurance. Officer Monaghan contends Mr. Moore refused to provide identification or otherwise comply with his instructions, Doc. No. 36-2 at 39:4-40:16; Mr. Moore responds that he was not given the chance to comply, Doc. No. 36-5 at 49:9-12.

Sometime thereafter, when Mr. Moore had not produced identification, Officer Monaghan ordered Mr. Moore to get out of the car and briefly frisked him.

Officer Monaghan contends that he "guided [Mr. Moore] out of the car." Doc. No. 36-2 at 42:2-5. Officer Monaghan testified that, after frisking Mr. Moore, he recovered two clear plastic containers from Mr. Moore's pockets. Mr. Moore describes the scene quite differently: he testified that Officer Monaghan "grabbed [his] left arm" and "grabbed the side of [his] head" then pulled Mr. Moore out of the car, spun him around, kicked and tripped him then body slammed him to the ground. Doc. No. 36-5 at 44:17-21. Mr. Moore disputes that anything was recovered from his pockets.

While Mr. Moore was being searched, he asked Officer Monaghan, "Brother, why are you doing this to me?" Officer Monaghan allegedly responded, "I ain't your f--ing brother." Doc. No. 36-5 at 58:21-59:14. Mr. Moore also testified that he told Officer Monaghan, "Man, you ain't know who I know," to which Officer Monaghan replied, "f-- who [you] know." Doc. No. 36-5 at 59:16-19. Mr. Moore was then escorted to the patrol car. He testified that he does not recall anything that happened after he was placed in the car until he woke up in a cell. Doc. No. 36-5 at 59:20-22.

The parties do agree that Officer Hall played no role in these events. Officer Hall remained by the patrol car and did not participate in removing Mr. Moore from the car. Doc. No. 36-5 at 53:15-22. Officer Hall did not say anything to Mr. Moore, *id.* at 53:24, nor did he touch Mr. Moore, *id.* at 61:3-4.

After Mr. Moore was inside the patrol car, the officers searched his car. The officers explained this search based on Mr. Moore's refusal to identify himself and the smell of marijuana allegedly coming from his car. They recovered bulk marijuana and paraphernalia from inside the trunk. Doc. No. 36-4 (Arrest Memo). Mr. Moore testified that he did not know whether either officer searched his car because he has no recollection of the events. Doc. No. 36-5 (Moore Depo. Tr.) at 61:16-22.

The officers transported Mr. Moore to the local precinct where he was processed under the name Kenneth Moore. Doc. No. 36-7 (Arrest Photo). A third officer (who is not named in this action) examined him and prepared a medical checklist to clear Mr. Moore for custody. Doc. No. 36-8 (Medical Checklist). According to the checklist, Mr. Moore did not have any obvious pain or injury or obvious serious medical problems. *Id.* But, reportedly, he appeared to be under the influence of alcohol or drugs and there were visible signs of alcohol or drug withdrawal. *Id.* A

detective at the precinct tested the contents of the plastic jars recovered from Mr. Moore's pockets. The contents tested positive for marijuana and the results of the test were included on the arrest report, which the detective prepared. Doc. No. 39-10 (PARS report).

The Philadelphia District Attorney charged Mr. Moore with possession with intent to deliver, possession of drug paraphernalia, and possession of a controlled substance. He was incarcerated for five days before he was released on bail. Mr. Moore moved to suppress the marijuana recovered from the trunk of his car.[1]   After the court granted his motion, the Commonwealth dismissed the charges as *nolle prosequi*.

The parties' path to summary judgment here has proceeded in fits and starts. Mr. Moore initially sued the City of Philadelphia. Because he failed to plead municipal liability under § 1983, the Court dismissed the City from this action. Mr. Moore has amended his complaint three times and now proceeds only against the two officers involved in the traffic stop. Count I asserts a litany of federal civil rights violations under § 1983. Mr. Moore brings several state law causes of action in Counts II through VI. In Count VII, he alleges civil conspiracy under 42 U.S.C. § 1985. In denying the officers' second motion for a more definite statement, the Court found that the fourth iteration of the complaint—though sparse in detail—was not unintelligible. Doc. No. 34. The Court understood Mr. Moore to base his federal § 1983 claim on (1) unlawful search and seizure absent probable cause, (2) unreasonable and excessive force, (3) unlawful arrest, detention, and imprisonment, (4) malicious prosecution, and (5) verbal abuse.

The officers filed a motion for partial summary judgment. They move on all claims asserted against Officer Hall and all claims except for the § 1983 claim for excessive force and state law assault and battery asserted against Officer Monaghan.

---

[1]     Based on a review of the state court proceedings, it is not clear what evidence Mr. Moore specifically sought to suppress.

### LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. One of the principal purposes of summary judgment is to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After the moving party has met its initial burden, the non-moving party must set out "specific facts showing a genuine issue for trial." *Betts*, 621 F.3d. The non-moving party may do so by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to make a "showing

sufficient to establish the existence of an element essential" to its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322.

**DISCUSSION**

The officers move for summary judgment on all claims asserted against Officer Hall and all claims except for the § 1983 claims for excessive force and state law assault and battery asserted against Officer Monaghan. The Court grants the motion on every claim except for the § 1983 claim based on unlawful search and seizure.

**I.      Mr. Moore's § 1983 Claims (Count I)**

**A.  Unlawful Search and Seizure of Mr. Moore and His Car**

The Fourth Amendment protects people against unreasonable searches and seizures. A traffic stop is a "seizure" under the Fourth Amendment. *United States v. Johnson*, 452 F. App'x 219, 225 (3d Cir. 2011). After a car has been legally stopped, "the police may 'escalate' the encounter by visually inspecting the interior of the car, and checking credentials and asking questions of the occupants." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006). Moreover, under *Mosley*, "any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *Id.*

It is undisputed that the officers conducted a warrantless car stop and subsequent search. But the parties dispute whether the officers had probable cause to stop and search Mr. Moore and his car.

The Third Circuit Court of Appeals has explained that, in general, "the existence of probable cause is a question of fact for the jury." *Montgomery v. De Simone*, 159 F.3d 120 (3d Cir. 1998). Here, the basis of probable cause determination rests on a factual dispute and

6

credibility conflict. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). The parties present conflicting narratives about whether the stop and search were justified.

The Court must view the facts in the light most favorable to Mr. Moore. This includes a review of the parties' depositions, and transcripts from the preliminary hearing and the suppression hearing.

The officers assert that their search was warranted based on Mr. Moore's erratic driving, the smell of marijuana coming from the car, and his behavior during the stop. To be clear, the odor of marijuana can provide probable cause. *United States v. Registe*, 830 F. App'x 708, 710 (3d Cir. 2020).

But Mr. Moore disputes that he was driving erratically or violating any traffic laws and he asserts that he was compliant with Officer Monaghan's requests after he was stopped. He does not dispute that marijuana was recovered from the car but responds that he could not smell it. In granting the motion to suppress, the state court judge credited Mr. Moore's description of the stop, in part because she determined that the officers' narrative was confused and contradictory.

Neither this Court nor a jury is bound by the credibility findings of the state court. Likewise, the Court does not make any credibility determinations when deciding a motion for summary judgment. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). But this Court cannot completely ignore that at least one other court found that the officers' testimony was "incredible." In so finding, the state court emphasized the officers' "mistaken testimony and inaccurate recording of the facts." Doc. No. 39-7 (Motion to Suppress Ruling) at 7-8.

The officers urge the Court not to consider the state court findings on the grounds that they are hearsay and the officers were not parties at the suppression hearing. In general, the Court may

consider only evidence or statements that would admissible at trial when deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). Here, the Court can take notice of "publicly available records and transcripts from judicial proceedings." *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020); Fed. R. Evid. 201(b). In so doing, the Court acknowledges the existence of another court's opinion, although it does not adopt the truth of the facts included therein. *Sturgeon*, 438 F. Supp. 3d at 257 (internal citations omitted). Moreover, at trial, the officers can be cross-examined based on "prior occasions when [their] testimony in other cases has been criticized by [a] court as unworthy of belief." *United States v. White*, 692 F.3d 235, 248 (2d Cir. 2012), *as amended* (Sept. 28, 2012); Fed. R. Evid. 608(b). To the extent that the officers claim the state court findings contain alleged procedural and legal errors, their arguments go to the weight of the evidence—not to its admissibility.

But, without regard to the future use of the rules of evidence, because the Court must view the evidence in the light most favorable to Mr. Moore, it cannot find that the record would not permit a jury to reasonably question whether the officers had probable cause to stop Mr. Moore's car before searching him and the car.

Accordingly, the Court will deny the motion for summary judgment on Count I as to the unlawful search and seizure of Mr. Moore and his car.

### B. Unreasonable and Excessive Force Against Officer Hall

Officer Hall moves for summary judgment on Mr. Moore's § 1983 claim for unreasonable and excessive force because there are no facts to implicate him in any use of force.[2] The Court must agree.

---

[2]     Officer Monaghan is not moving for summary judgment on this claim because he "recognize[s] there are material facts in dispute regarding Plaintiff's claims against [him] for § 1983 excessive force and state law assault and battery." Doc. No. 36 at 4.

First, the record presents nothing as to Officer Hall's personal involvement in the alleged assault. Mr. Moore testified that Officer Hall did not remove him from his car, nor was he involved in the frisk or search of Mr. Moore. Doc. No. 36-5 at 58:3-8. Instead, Mr. Moore testified that Officer Hall stayed by the patrol car, *id.* at 56:7-9, did not say anything to him, *id.* at 53:23-54:1, and did not touch him, *id.* at 58:3-8.

Second, vicarious liability is not available in §1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). It is well established within this Circuit that a "defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000).

Mr. Moore's attempt to recast this count as a failure to intervene for the first time at summary judgment fails. Mr. Moore—who is represented by counsel—has thrice amended his complaint and has never once alleged a failure to intervene claim. He cannot raise a new claim in a brief. So the Court will not consider such a claim at this time. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 n.1 (3d Cir. 1997) ("Although a complaint's allegations are to be construed favorably to the pleader . . . we will not read causes of action into a complaint when they are not present.").

To the extent the Court understands the response to also allege supervisory authority, this similar eleventh hour attempt likewise fails. A supervisor may be personally liable under § 1983 if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). As with the failure to intervene claim, Mr. Moore raises this argument for the first time in briefing. For that reason, the Court will not consider it here. But fatal to this claim—even were it properly before the Court—

9

is the lack of any evidence to establish a supervisory relationship between the two defendant officers.

The Court dismisses Count I insofar as it alleges unreasonable and excessive force against Officer Hall.

### C. False Arrest and False Imprisonment

The officers move for summary judgment on Mr. Moore's claim that he was unlawfully arrested and imprisoned. Because both claims overlap in their requirement that a plaintiff was arrested absent probable cause, the Court considers these claims together. *See Williams v. City of Phila.*, 2010 WL 4181873, at *5 (E.D. Pa. Oct. 22, 2010).

False arrest and false imprisonment under the Fourth Amendment both require finding that the defendants acted without probable cause and are not entitled to qualified immunity. *Jenkins v. City of Phila.*, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (quoting *Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014)). Probable cause in this context exists when there is a "fair probability that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Brown v. Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Moreover, it is irrelevant to the probable cause analysis "whether a person is later acquitted of the crime for which he or she is charged." *Wright v. City of Phila.*, 409 F.3d 595, 601 (3d Cir. 2005).

In general, the existence of probable cause is a question of fact for the jury. However, the court "may conclude that probable cause did exist as a matter of law if the evidence, viewed in the

light most favorably to the plaintiff, reasonably would not support a contrary factual finding." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). That is the case here.

Mr. Moore does not dispute that the officers recovered bulk marijuana, a digital scale, and packaging material from the trunk of his car. Nor does he dispute that possession of marijuana in Pennsylvania provides probable cause for an arrest. Although the car he was driving at the time was registered to his daughter, Doc. No. 39-1 ¶ 8, Mr. Moore was the sole occupant of the vehicle and he does not allege that the marijuana did not belong to him.[3] Moreover, even though he does not recall the officers recovering the drugs from his car, he does not contend that the evidence never existed or was planted. Nor could he. The drugs served as the basis for his motion to suppress in state court.

Mr. Moore also moved to suppress the marijuana in glass vials allegedly recovered from his pockets. It is true that Mr. Moore disputes that marijuana was on his person. Doc. No. 39-4 (Motion to Suppress Hr'g Tr.) at 37:15-20. But this fails to raise a triable issue as to the existence of marijuana that supported his arrest. No rational jury could conclude that there was not marijuana found in the trunk of his car.[4]

Mr. Moore argues that the lack of probable cause to initiate the search extends to the lack of probable cause for his arrest. He is mistaken. Although a plaintiff whose privacy is invaded may recover damages in a § 1983 action for an unlawful search or seizure, that same plaintiff is not entitled to damages when the search yields incriminating evidence. *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000).

---

[3]     Instead, he maintained that he did not know whether there was marijuana in the car and had not looked in the trunk that day.

[4]     Nor does Mr. Moore offer affirmative evidence to rebut that the substance in the vials was separately tested by detectives during processing and positively identified as marijuana.

The Court can consider the items found during the allegedly unlawful search of his person and his car. The exclusionary rule certainly applies in criminal cases but it is not imported to the civil docket in § 1983 proceedings. *Hector*, 235 F.3d at 158-59. As this Court has explained, "[t]he lack of probable cause to . . . search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Christian v. Orr*, 2011 WL 710209, at *17 (E.D. Pa. Mar. 1, 2011), *aff'd as amended*, 512 F. App'x 242 (3d Cir. 2013) ("Whatever the legality of the searches that yielded the marijuana in the pockets of [the defendants], possession of this drug is illegal in Pennsylvania and thus provides the basis for the police to effect a legitimate arrest."); *Barnett v. City of Phila.*, 2020 WL 6342764, at *7 (E.D. Pa. Oct. 29, 2020) (dismissing false arrest and imprisonment claims when officers recovered controlled substances and a handgun from defendant during a traffic stop). Thus, it is immaterial to the false arrest and imprisonment claims whether the officers could smell marijuana either on Mr. Moore or in his car, although it is relevant to whether the initial stop and search were lawful. Likewise, suppression of the marijuana in the criminal proceeding has no bearing whether the officers were justified in arresting Mr. Moore after recovering the drugs. *Christian*, 2011 WL 710209, at *17.

Because the officers had probable cause to arrest Mr. Moore, the record does not support his false arrest and false imprisonment claims. So the Court will grant summary judgment as to both defendants here on these causes of action.

### D. Malicious Prosecution

The officers also move for summary judgment as to the malicious prosecution claim under § 1983. To prevail on this claim, the plaintiff must show: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated

without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Waters v. Cheltenham Twp.*, 700 F. App'x 149, 152 (3d Cir. 2017). A plaintiff's failure to satisfy any of the elements is fatal to the claim. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009).

As with his false arrest and false imprisonment claims, Mr. Moore must show that the proceeding was initiated without probable cause. The standard is "merely a fair probability that the arrestee committed a crime." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 475 (3d Cir. 2016). For the reasons discussed above, the defendant officers had probable cause to arrest Mr. Moore. So, there was also probable cause to initiate criminal proceedings against him. *Eckman v. Lancaster City*, 529 F. App'x 185, 187 (3d Cir. 2013).

Moreover, malicious prosecution requires that the criminal proceeding have ended in plaintiff's favor. For a *nolle prosequi* to be a favorable termination, the court must find that the charges were dismissed due to indications that the accused was actually innocent. *Donahue v. Gavin*, 280 F.3d 371, 383-84 (3d Cir. 2002). Here, the only evidence of why the Commonwealth dropped the charges is the circumstance of the motion to suppress. The Third Circuit Court of Appeals has stated a dismissal once the prosecution believed it could no longer meet its burden of proof after witness identifications were suppressed did *not* meet the favorable termination element. *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 n.2 (3d Cir. 2013).

Thus, the officers are entitled to summary judgment on the § 1983 malicious prosecution claim.

**E. Verbal Abuse**

The officers also move for summary judgment on the § 1983 claim arising out of alleged verbal abuse because they argue that such a claim is not cognizable under § 1983.

The Court grants summary judgment as to the verbal abuse claim against Officer Hall. Mr. Moore admitted that Officer Hall said nothing to him. Certainly, no claim can stand amidst the sound of silence.

Mr. Moore has failed to identify which statements support his claim for verbal abuse by Officer Monaghan. Nor does he address this claim in his response in opposition. Even so, the Court identifies two statements from Officer Monaghan that could be the basis for the claim. The parties do not dispute that while Officer Monaghan was searching Mr. Moore, he responded, "I ain't your f--ing brother." *See* Ex. D at 58:21–59:14. 31. Mr. Moore also testified that he asked Officer Monaghan, "Man, you ain't know who I know," to which Officer Monaghan replied, "f--who [you] know." *See id.* at 59:16-19.

The first obstacle is whether Mr. Moore's verbal abuse claim is cognizable under § 1983. The Third Circuit Court of Appeals has repeatedly held it is not. *Todd v. Walters*, 166 F. App'x 590, 592 (3d Cir. 2006) (verbal abuse is not actionable under § 1983); *Logan v. Ogershok*, 142 F. App'x 648 (3d Cir. 2005) (affirming finding that plaintiff's allegations of verbal abuse failed to state a constitutional claim). And district courts within this Circuit have in general held that instances of psychological or verbal abuse by government actors *alone* is "not severe enough to qualify as a constitutional tort actionable under § 1983." *Bridges v. Scranton Sch. Dist.*, 66 F. Supp. 3d 570, 585 (M.D. Pa. 2014); *Hailey v. Beard*, 2019 WL 5592578, at *12 (E.D. Pa. Oct. 29, 2019) (same). On this basis, the Court is inclined to grant summary judgment as a matter of law.

14

But these cases have not considered alleged verbal abuse during an arrest where the plaintiff has also alleged excessive force.

To the extent the Court recognizes verbal abuse as cognizable under § 1983, the language needs to rise to some level of threatening. Even decidedly offensive profanity or racially offensive language by officers during an arrest has been found not to state a § 1983 claim. *See Doughty v. Comunale*, 2009 WL 304463, at *3 (D.N.J. Feb. 5, 2009) (collecting cases). Here, the alleged statements do not rise to the level necessary to state a constitutional violation of Mr. Moore's rights.[5] So the claim fails on this ground too.

However, the Court is cognizant that Officer Monaghan allegedly made these statements while using allegedly excessive force against Mr. Moore. Officer Monaghan is not moving for summary judgment on the § 1983 excessive force and state assault claims. Although the Court grants summary judgment as to the standalone verbal abuse claim, the statements at issue can be considered in the context of these surviving claims.

## F. Fourteenth Amendment Claim for Unlawful Search, Seizure, and Excessive Force

Mr. Moore's allegations of unlawful search, seizure, and excessive force arising out of his pre-trial seizure, arrest, and detention are analyzed under the Fourth Amendment. So, "the more generalized invocation" of the Fourteenth Amendment does not apply here. *Verdier v. Borough*, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). To the extent Mr. Moore's reference to the Fourteenth Amendment incorporates his various Fourth

---

[5]    Moreover, these statements—standing alone—hardly (albeit, quite regrettably so) shock the conscience under local community standards in Philadelphia. *See* Dan Stamm, *Philadelphia's the Angriest Town Around But Is That Something Not to Get Angry Over*, NBC Philadelphia (June 1, 2016), https://www.nbcphiladelphia.com/news/sports/philadelphia-anger-thrillist-city/70023/. This ruling and this citation should not be misunderstood as this Court considering such language as acceptable for use in non-exigent or unrestrained circumstances that may engender such utterance.

Amendment claims, he is not required to invoke the Fourteenth Amendment to bring a Fourth

Amendment claim under § 1983. *See McCall v. City of Phila.*, 396 F. Supp. 3d 549, 557 (E.D. Pa.

2019). Construing the Third Amended Complaint as alleging a separate substantive due process

claim, the Court dismisses this claim with prejudice against both Defendants. *See Williams v. City*

*of Chester*, 2015 WL 224384, at *2 (E.D. Pa. Jan. 15, 2015).

### G. Qualified Immunity

The officers assert that even if there is a triable issue as to whether they lacked probable

cause in searching Mr. Moore, they avoid liability due to qualified immunity.

Qualified immunity shields government officials performing discretionary functions from

civil damages provided that their conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v. Callaha*n, 555

U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because the

officers affirmatively claim it as a defense, they have the burden to establish their entitlement to

qualified immunity. *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011). The Court

must determine "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right,

and (2) whether the right was 'clearly established' at the time of the official's conduct." *Bland v.*

*City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018). Summary judgment is not appropriate if, crediting

the plaintiff's version of the facts, the defendants violated the plaintiff's clearly established

constitutional rights. *Bush v. Renegar*, No. CV 18-327, 2020 WL 5408065, at *5 (E.D. Pa. Sept.

9, 2020). Nor is the affirmative defense available to the defendant who knows or should know that

he is acting outside of the law.

At this juncture, the officers are not entitled to a ruling of qualified immunity. When

viewed in the light most favorable to Mr. Moore, his submissions do make out a constitutional

violation for an unlawful search. Drawing all inferences in Mr. Moore's favor, at this point, the Court must accept that the officers fabricated the smell of marijuana during the stop and that Mr. Moore complied with Officer Monaghan's directions. The officers do not contest the clearly established proposition that a search of a vehicle, without probable cause or another exception to the warrant requirement, would violate the Fourth Amendment.

Although the Court denies their motion for summary judgment on the unlawful search and seizure, the officers may again raise qualified immunity as a defense after the fact finder has resolved the disputed issues. *See Geist v. Ammary*, 40 F. Supp. 3d 467, 483 (E.D. Pa. 2014). ("Qualified immunity, however, may be raised again as a defense after the disputed issues of fact are resolved.").

## II.    State Law Claims

The officers move for summary judgment on all the state law claims except Mr. Moore's state law assault and battery claim.

### A.  False Arrest, False Imprisonment (Count IV)

Constitutional false arrest and common law false arrest claims are "coextensive both as to elements of proof and elements of damages." *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000). And, like their federal constitutional counterparts, Pennsylvania common law false arrest and false imprisonment are "essentially the same claim." *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 790 (E.D. Pa. 1999). Both common law false arrest and false imprisonment require an arrest without probable cause.

For the same reasons set forth above regarding Mr. Moore's § 1983 false arrest and false imprisonment claims, the Court grants summary judgment in favor of both defendants.

### B.  Malicious Prosecution (Count IV)

17

The elements of a common law tort of malicious prosecution nearly mirror those of a § 1983 malicious prosecution claim. Mr. Moore must demonstrate that the defendant officers "(1) instituted proceedings against [him], (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in [his] favor." *Rosembert v. Borough of East Landsdowne*, 14 F. Supp. 3d 631, 644-45 (E.D. Pa. 2014). As discussed in the context of the constitutional claim, the officers satisfied the probable cause standard. So, the Court will grant summary judgment in favor of the defendants on the common law claim too.

## C. Abuse of Process (Count IV)

The officers also move for summary judgment on Mr. Moore's abuse of process claim. The Court will grant summary judgment because there is no evidence in the record that the officers "perverted" the legal process or intended to secure anything other than Mr. Moore's criminal conviction.

An abuse of process claim requires showing that (1) the defendant used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, (3) which caused harm to the plaintiff. *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993). The essence of the tort is the "perversion of process *after* it is issued." *Turkos v. Dupont Borough*, 721 F. App'x 208, 215 (3d Cir. 2018) (quoting *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)). Examples of such claims include "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." *Marable v. W. Pottsgrove Twp.*, 2005 WL 1625055, at *12 (E.D. Pa. July 8, 2005), *aff'd*, 176 F. App'x 275 (3d Cir. 2006).

There is no dispute that the officers recovered marijuana from the trunk of Mr. Moore's car. Nor is it disputed that he was later charged by the Philadelphia authorities for possession of a controlled substance. So, to establish a claim, there must be some proof of a "definite act or threat

not authorized by the process, or aimed at an objective not legitimate in the use of process."
*Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 282 (3d Cir. 2006). The Court finds no
reference to any such evidence of such perversion here.

Mr. Moore offers two arguments in response. First, he alleges that not all of his personal
items were logged on the property receipt when he was processed at the precinct. Second, he
argues that Officer Monaghan's testimony during the criminal proceedings reflected that he had a
malicious motive.

Neither effort cures this fatal deficiency. Mr. Moore has not established how the officers'
alleged failure to record certain of his personal effects constitute an after-the-fact improper
perversion of the legal process necessary to state an abuse of process claim. Such facts might
support a state law claim for conversion, but Mr. Moore has not pled conversion despite amending
the complaint three times.[6]

Nor has he produced any evidence that the officers sought anything other than a criminal
conviction—the authorized conclusion of the state law proceeding. The Third Circuit Court of
Appeals has explained that "there is no action for abuse of process when the process is used for
the purpose for which it is intended, but there is an incidental motive or spite or ulterior purpose
of benefit to the defendant." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 305
n.2 (3d Cir. 2003). So, even if Officer Monaghan harbored some bad intentions, this would be
insufficient. Indeed, even if Officer Monaghan perjured himself during the state criminal
proceedings, the alleged perjury could not support an abuse of process claim. The Supreme Court

---

[6]     Throughout the proceedings, the amount of cash Mr. Moore supposedly had on him has widely
fluctuated. In his response to Defendants' interrogatories, Mr. Moore stated that "$1,875 in U.S. currency"
was seized, but only $1,500 was returned. Doc. No. 39-3 (Moore Depo. Tr.) at 100:5-24. By the time he
responded to Defendants' motion, that amount had climbed to $2,300. Doc. No. 39 at 19.

        It is not disputed that Officer Monaghan recovered an amount of cash during the search and logged
$1,575 on the property receipt. Doc. No. 36-6 (Property Receipts).

in *Briscoe v. LaHue* insulated police officers from civil liability based on knowingly false testimony. 460 U.S. 325, 335-36 (1983).

Accordingly, the Court grants summary judgment as to the state law abuse of process claim against both officers.

### D. Intentional Infliction of Emotional Distress (Count V)

The officers also seek dismissal of Mr. Moore's claim for intentional infliction of emotional distress because Mr. Moore fails to present evidence that he has suffered emotional distress.

Although Pennsylvania recognizes this tort, courts are cautious in permitting recovery under this theory. *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989). Such a claim in Pennsylvania requires plaintiff to show "extreme and outrageous conduct" that "intentionally or recklessly caused severe emotional distress." *Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 720 (E.D. Pa. 2007). Resolution of this kind of claim is appropriate at the summary judgment stage because the court determines "in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous [as] to permit recovery." *Bock v. CVS Pharmacy, Inc.*, No. 07-CV-412, 2008 WL 3834266, at *2 (E.D. Pa. Aug. 14, 2008).

Even if the alleged conduct is sufficiently outrageous, Pennsylvania courts require evidence of a physical injury caused by the defendant's conduct. *Short v. Chief Shawn Payne & Officer Parker*, No. CV 15-5873, 2016 WL 1594791, at *4 (E.D. Pa. Apr. 20, 2016); *Bock*, 2008 WL 3834266, at *3 ("Plaintiff's lack of medical evidence thus renders this claim appropriate for summary judgment."). Mr. Moore has not produced any competent supporting medical evidence. He testified that, after being released from custody, he went to Chestnut Hill Hospital to be evaluated. He alleged that one of his ribs was fractured. Doc. 36-5 at 77:4-10. He also complained

20

of shoulder and arm pain. But his self-serving deposition testimony is otherwise uncorroborated. And he provides no medical evidence to attest to his alleged emotional distress. Moreover, the arrest and medical checklist—taken at the time of the booking—state that Mr. Moore did not have any apparent pain or injuries. Doc. No. 36-8. In the absence of competent medical evidence, the Court must grant summary judgment on Count V. *See Wilson v. Dewees*, 977 F. Supp. 2d 449, 460 (E.D. Pa. 2013).

### E. Negligent Infliction of Emotional Distress (Count VI)

Finally, the officers assert that Mr. Moore's remaining negligent infliction of emotional distress claim is barred by Pennsylvania's Political Subdivision Tort Claims Act. 42 Pa. C. S. § 8541 *et seq*. Mr. Moore does not address this claim in his response in opposition. Nevertheless, the Court agrees with Defendants that Count VI is barred by the Act.

A plaintiff may bring a negligence claim against a Pennsylvania municipality and its employees only if the claim falls into one of nine "strictly construed" categories for which the Tort Claims Act has waived sovereign immunity. *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 1988). These nine exceptions are: "(1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency ... (2) Care, custody or control of personal property ... (3) Real property ... (4) Trees, traffic controls and street lighting ... (5) Utility service facilities ... (6) Streets ... (7) Sidewalks ... (8) Care, custody or control of animals...(9) Sexual abuse." 42 Pa. C.S. § 8542(b).

Plainly, the second through ninth exceptions are irrelevant to Mr. Moore's claim. To the extent that he claims the first exception—"vehicle liability"—applies, this likewise fails. [7]

---

[7]     The vehicle exception exposes a municipality and its employees to liability for "the operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this section if the plaintiff was, during the course of the

Mr. Moore has not alleged the operation of the patrol car that is related to any alleged negligent infliction of emotional distress. It is undisputed that after arresting Mr. Moore, Officer Monaghan put him in the back of the car and drove to the precinct. At most, the operation of the patrol car is "incidental" to Officer Monaghan's search and arrest of Mr. Moore. *See Lakits v. York*, 258 F. Supp. 2d 401, 406 (E.D. Pa. 2003) ("No moving part of the police car was in any way involved in the events complained of in this lawsuit."). But Officer Monaghan's use of the police car does not qualify as a negligent act for which an exception to the Tort Claims Act would apply. And, because Mr. Moore admits that "Officer Hall didn't do anything to me at all," Doc. No. 36-5 at 61:3-4, the Court will grant both officers' motion for summary judgment on Count VII.

## III.    Civil Conspiracy (Count VII)

Count VII asserts a conspiracy between the officer defendants to deprive Mr. Moore of his civil rights under 42 U.S.C. § 1985. Doc. No. 29 (3d Amend. Compl.) ¶ 87.[8]  To state a § 1985 claim, a plaintiff must allege "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to

---

alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer . . . ." 42 Pa. C.S. § 8542(b)(1).

[8]      Although Mr. Moore asserts Count VII under a federal statute, his response in opposition to the officers' motion appears to recast the civil conspiracy claim as a common law claim. This may be because the officers have misread the complaint and moved for summary judgment on a common law civil conspiracy claim. But even if they have refashioned Mr. Moore's claim, Mr. Moore did not plead a common law civil conspiracy claim and cannot now raise it in his response.

      Moreover, his response to the motion for summary judgment on the civil conspiracy claim is only that "there is sufficient evidence for a jury to conclude that Defendants engaged in willful misconduct." Doc. No. 39 at 15-16. Regardless of how the officers construed Count VII, it remains Mr. Moore's responsibility to state a claim—which he fails to do here.

person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v.* Arnold,112 F.3d 682, 685 (3d Cir. 1997).

Mr. Moore has not satisfied the pleading requirements under § 1985. He has not alleged a conspiracy to violate his equal protection rights based on a racial or "otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The Court takes judicial notice that Mr. Moore is African-American, as evidenced by certain exhibits appended to the motion. But none of Mr. Moore's four iterations of his complaint set forth any allegations of racially motivated conspiracy by either defendant. Nor does the operative complaint allege Mr. Moore's race.

Because Mr. Moore fails to plead—let alone adduce evidence in support of—his claim, the Court grants summary judgment on Count VII as to both defendants.

**CONCLUSION**

For the reasons set out in this Memorandum, the Court grants in part the motion for summary judgment. An appropriate Order follows.

BY THE COURT:

**GENE E. K. PRATTER**
**UNITED STATES DISTRICT JUDGE**